[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff Paul Horton and the defendant, whose maiden name was Mary Kuphal, were intermarried at Edina, Minnesota, on December 11, 1965. In March of 1995, the plaintiff husband commenced this action for dissolution of the parties' marriage on the ground of irretrievable breakdown. The defendant wife filed an answer admitting the allegations of the complaint and also filed a cross complaint alleging irretrievable breakdown and seeking alimony and other relief, as on file.
The couple have two children, both of whom are in their twenties and reside in Minnesota. There are no minor children issue of this marriage, and no other children have been born to the wife since the date of the marriage of the parties.
Neither party is a recipient of public assistance. All statutory stays have expired, and the court has jurisdiction. Although the defendant would, if she could, try to salvage the marriage, it is clear to the court that the marriage has broken down irretrievably and that there is no reasonable hope of reconciliation.
Each party was represented by counsel at trial, each testified, and each submitted financial affidavits. A number of other witnesses testified and numerous documents and other items were introduced into evidence. At the conclusion of the testimony, the parties filed claims for relief setting forth their respective positions relating to the matters at issue. The court has carefully reviewed and considered these claims as well as all the statutory criteria contained in General Statutes §§46b-81 and 46b-82 and the interrelationship of the various orders that it is about to enter.
The husband is 53 years old, a psychiatrist whose combined private practice and clinic work grossed a quarter of a million dollars during 1994. He is the author of two books. He is in reasonably good health, although he is concerned about some signs of the heart disease that killed his father at an early age. He has one of the most successful psychiatric practices in this part of the state, and he has unquestionably been a good financial provider for his family.
The wife is 51 years of age. She is in reasonably good health, but sees a psychiatrist and takes some medication. She has had problems with her weight, and the court heard CT Page 754 unsubstantiated allegations of excessive drinking on her part. A college graduate who was once certified to teach in Connecticut, she has not worked since the early 1970's. At the beginning of the parties' marriage, she had supported her husband while he was in medical school and residency, at one time holding two jobs and beginning to raise a family. She eventually quit work entirely and devoted herself to raising her two sons and maintaining the family home. Although her sons have not lived at home for some years, however, she has not made any effort to seek renewed employment.
Each party blames the decline of the marriage on the other. From the wife's perspective, this decline began early in the marriage when the husband began to propose that they engage in "wifeswapping". The wife testified that she was hurt and offended by these suggestions and that nothing ever came of them. The husband was somewhat equivocal about these conversations but did not deny that they had occurred. Although the court credits the accuracy of the wife's testimony in this regard, it does not believe that this was the cause of the breakdown of the marriage.
The wife also suspects her husband of involvement in several affairs, including one with a woman he now sees regularly. The husband admits only to a single one-night stand at a conference many years ago, but beyond that, the defendant did not establish that such affairs, if they did occur, were the cause of the breakdown of the marriage.
Finally, the defendant cites the plaintiff's constant berating of her and of her handling of financial matters, her weight fluctuations, and the manner in which she raised the two children, which he felt was undertaken without sufficient discipline. These latter allegations by the wife are unquestionably true, and although it cannot be said that they are the cause of the breakdown of the marriage, it is apparent that they contributed to its more recent rapid decline.
The husband, for his part, also alleges that there were three reasons for the breakdown. The first was the wife's management, upbringing and discipline of the children, to which he attributes their having become lazy, underachieving, untrustworthy and unwilling to accept authority.
His second reason was her alleged mismanagement of the family finances, which were entrusted to her over the thirty-year period CT Page 755 of the marriage, along with substantial responsibility for the financial management of his psychiatric practice. He claims that she gave the children too much money, did not manage the household or his office budgets well and completely mismanaged the last year's tax returns by failing to cooperate in the taking of deductions.[1]
The third reason for the breakdown of the marriage, from the husband's perspective, was the wife's "addictive personality." He claims that she has a serious drinking problem, exacerbated by her combining alcohol with prescription medications. He also claims that she is addicted to food and money.
As to the first of these contentions, it is clear that there was and is a sharp disagreement between the parties as to how to bring up their children. One son, Paul Jr., testified on behalf of the mother. Although it is not for this court to determine whose approach to child rearing was the sounder, it was clear to the court from Paul Jr.'s emotional testimony that his relationship with his father has left unhealed scars.
A 1985 incident in which Paul Jr. called the police following an angry outburst from his father over the son's poor grades was a significant incident in this family's life. Although there was no allegation of physical violence, there was substantial property damage. Dr. Horton still very much resents the fact that he was arrested in this incident, even though the charges were eventually dropped.
It is apparent that Dr. Horton had high expectations for his children and that, from his point of view, they failed to meet those expectations. It cannot, however, be concluded that the wife's approach to child rearing constituted fault for the breakdown of the marriage.
As to the financial issues, it is apparent that subsequent to the husband's leaving the marital residence in October of 1994, the relationship between the parties has worsened and there has been less than wholehearted cooperation by the wife on financial matters. This deterioration, however, followed twenty-nine years of apparently successful financial management. It strains credulity to claim that the wife's alleged failures with regard to enabling the husband to establish the $35,000 or so worth of deductions he had been counting on with respect to "Ideal Forms Partnership" were the cause of the breakdown of the marriage. CT Page 756
Finally, the husband was not successful in proving his wife an alcoholic or otherwise an addict. Even if his allegations were to be taken at face value, however, these disabilities could not be viewed as the cause of the marital breakdown. On balance, although the parties were able to identify many reasons for the breakdown of the marriage, and although Dr. Horton emerged from the proceedings as the more complex and less likeable of the parties, this court is not able to conclude that either party bears a significantly disproportionate share of the fault for the breakdown.
The parties own a home, currently occupied by the wife, in which there is little if any equity. Although the parties have not managed to amass any liquid savings or stocks or bonds, the husband has succeeded in depositing substantial sums into a Keogh plan whose current assets are approximately $800,000. The wife has an Individual Retirement Account with a present value of about $19,000. These, and the husband's earnings, are the principal financial assets of the parties.
The parties' financial affidavits also revealed substantial liabilities, including credit card, credit union and miscellaneous debts totalling approximately $87,000 and tax liabilities of about $33,000.
Given the fact that the wife has not worked in her chosen profession in more than twenty years, it is not reasonable to expect that she will quickly, if at all, be able to return to it. It is, however, realistic to expect and require that she obtain some employment within the foreseeable future, although it may take some time for her to be able to obtain such work. Even with whatever employment she may receive, however, she will not, on her own, be able to approach the standard of living that she enjoyed during her thirty years of marriage.
The court therefore enters the following orders:
1. The husband shall pay periodic alimony to the wife in the sum of $1200 per week for a period of three years, after which he shall pay periodic alimony in the amount of $800 per week until the wife's death, remarriage or cohabitation.
2. The family residence located at 570 Redstone Drive, Cheshire, Connecticut, shall be sold, and, after the payment of CT Page 757 the usual costs of closing and the mortgages on the property, the proceeds, if any, or losses shall be divided equally between the parties. The wife, who shall have exclusive use of the marital residence until its sale, shall have the property ready for real estate showings within forty-five days of the date of this decree, and both parties shall cooperate in all ways in the effort to sell it. During this period, the wife shall be responsible for the mortgage payments and other expenses related to the maintenance of the family home and shall hold the husband harmless with respect thereto.
3. The wife shall receive an amount equal to one half of the sum of the value of the husband's Keogh retirement account as of the date of this decree plus $10,000[2] by way of a Qualified Domestic Relations Order. The husband shall be entitled to the balance of that account, except that for a period of five years from the date of this decree or until the wife marries or cohabits, whichever shall first occur, the husband shall designate the wife as irrevocable beneficiary of his portion of the account. The court shall have continuing jurisdiction for the entry of said Qualified Domestic Relations Order. The wife shall be entitled to the benefit of her own Individual Retirement Account.
4. The husband shall provide health insurance for the benefit of the wife for a period of three years from the date of the decree, or until such time as the wife is employed and able to obtain such insurance through her employment, whichever shall first occur.
5. The wife shall supply the husband with copies of all prescription bills from Kaye's Pharmacy which are the subject matter of the pendente lite order so that the husband can process these bills through his medical insurance. The husband shall be responsible for one half of any outstanding balance for the prescription bills which are not covered by medical insurance as ordered by the court, Gaffney, J., on August 31, 1995.
6. The husband shall provide life insurance on his life in the amount of $40,000 with the wife as beneficiary for as long as he is obligated to pay alimony.
7. The wife shall be awarded the contents of the family residence, except that the husband shall be entitled to retrieve his books, pictures and remaining personal papers and items CT Page 758 within thirty days of the date of this decree.
8. The husband shall pay all pendente lite orders effective through the date of this decree.
9. The husband shall no later than April 1, 1996 pay counsel fees in the amount of $10,000 as an allowance to defend this action.
10. The wife shall be responsible for payment of the following debts shown on her financial affidavit: Navy Federal Credit Union ($2541); First Card; Optima American Express; Dress Barn; Filene's; Bousquet Lawn; First Union; Lawn Applications; Dr. Blair (to the extent not covered by the pendente lite orders in this case); Kaye's Pharmacy (to the extent not covered by the pendente lite orders in this case); Ford City Bank; Fleet Visa; Home Depot. All other liabilities reflected on the wife's financial affidavit, as well as those reflected[3] in the husband's affidavit, shall be the husband's responsibility.
Jonathan E. Silbert, Judge